UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

C. S. (XXX-XX-1948)　　　　　　　　　　CIVIL ACTION NO. 09-cv-0612

VERSUS　　　　　　　　　　　　　　　　JUDGE STAGG

U.S. COMMISSIONER SOCIAL　　　　　MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

**Introduction**

C. S. ("Plaintiff") filed an application for disability benefits based on a variety of health problems. ALJ D. Whit Haigler, Jr. held a hearing and issued a written decision that denied the claim. He found that Plaintiff, who was then 51 years old, has a GED, and past work experience as a welder, was not disabled.

Plaintiff pursued his claim to the Appeals Council, where he presented additional evidence. The Appeals Council denied the request for review. Plaintiff then filed this civil action to challenge the Commissioner's final decision. It is recommended, for the reasons that follow, that the Commissioner's decision be reversed and remanded.

**Summary of the ALJ's Decision**

In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past

relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there are jobs that exist in significant numbers that the claimant can perform. If, at any step, the claimant is determined to be disabled or not disabled, the inquiry ends. See Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007).

The ALJ found that Plaintiff was not engaged in substantial gainful activity (step one) and suffered from the following severe impairments (step two): hypertension, arthritis, and back disorder. He found at step three that those impairments did not meet or equal a listed impairment that is so severe as to require a finding of disabled without regard to the claimant's age, education, or work experience. Tr. 64-71.

The ALJ reviewed the medical evidence and testimony and assessed Plaintiff's residual functional capacity ("RFC"). He found that Plaintiff had the RFC to perform light work[1], subject to requirements that he be markedly limited in exposure to gases, fumes or other irritants; no exposure to vibration; and mild limitations in socialization, activities of daily living and concentration, persistence or pace.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b) and 416.967(b). The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. Social Security Ruling 83-10.

A vocational expert ("VE") testified that Plaintiff's past relevant work as a welder was medium work and required exposure to fumes and irritants, so Plaintiff could no longer perform that work. Tr. 50-51. The ALJ entered a finding at step four that Plaintiff could not perform that work. The VE was next asked if a person with Plaintiff's limitations and background could perform other jobs that exist in significant numbers in the economy. The VE testified that Plaintiff's RFC and work skills would allow him to perform the demands of laser beam worker (75,916 in the national economy; 2,354 in Louisiana) and gate guard (525,429 jobs nationally; 8,548 jobs in Louisiana). Tr. 52-54. The ALJ accepted that testimony and found at step five that Plaintiff was not disabled.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Listing 12.05(C); Mental Retardation**

Plaintiff's attorney stated at the hearing before the ALJ that he was not aware of any particular listings that might apply. Tr. 28. Plaintiff, now represented by a different attorney, argues that the Commissioner should have found Plaintiff disabled at step three because he meets the requirements of listing 12.05(C), which provides as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> \*\*\*
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

Plaintiff does not point to any evidence that was before the ALJ that suggested he was mentally retarded. In January 2009, several months after the ALJ issued his April 2008 decision, Plaintiff was examined by clinical psychologist Mark Dulle, Ph.D., at the request of a Louisiana rehabilitation agency. That examination included a finding of verbal I.Q. of 65, performance I.Q. of 62, and a full-scale I.Q. of 61, which placed Plaintiff within the category of mild mental retardation. Tr. 731.

Plaintiff argued to the Appeals Council, and now to the court, that the report from Dr. Dulle should result in a finding of disability under listing 12.05(C). The court must consider,

in determining whether there is substantial evidence to support the Commissioner's final decision, evidence such as the Dr. Dulle report that was submitted for the first time to the Appeals Council.  Higginbotham v. Barnhart, 405 F.3d 332 (5th Cir. 2005).

The IQ scores in the report might satisfy one aspect of the listing, but the claimant does not satisfy the listing unless he also meets the requirements of the "introductory" paragraph, which requires that he have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," generally before age 22.  Randall v. Astrue, 570 F.3d 651, 662 (5th Cir. 2009).

The Appeals Council specifically addressed the issue in its decision and rejected the argument because there was "no evidence to establish subaverage intellectually functioning during the developmental period."  Plaintiff's past semi-skilled work as a welder did not support a finding of such deficits.  Tr. 2 Plaintiff, in this appeal, has not pointed to any evidence of deficits in adaptive functioning during the developmental period.  There is evidence to the contrary, such as the 18-year welding career, being enrolled in regular classes in school, and earning a GED. Plaintiff has not met his step-three burden, and the Commissioner's final decision on this issue is supported by substantial evidence.

**Depression and Other Mental Disorders**

Plaintiff testified at his hearing that he was supposed to be taking medication for depression but could not afford it.  Tr. 38.  He said that he had a hard time focusing, experiences panic, and has poor concentration.  Tr. 43.  Plaintiff said he was taken to

Brentwood Hospital for 72 hours after he tried to harm himself. (Records indicate it was in 2004, after Plaintiff drank chemicals. Tr. 728, 730). The last time Plaintiff was treated for depression was about four years before the hearing.

Plaintiff said the Brentwood staff referred him to Shreveport Mental Health, but Plaintiff had no way to get there. He tried to talk to someone at LSU Medical Center to get help, but they simply wanted to place him in the psychiatric ward. Plaintiff recently found out that LSU had an outpatient clinic, but it would be four or five months before Plaintiff could be seen there. Plaintiff testified that he still had the same feelings and believed that he needed to be treated. Tr. 44-45. Plaintiff said he had been prescribed Cymbalta, an antidepressant, but a pharmacist told him he should not take it because he has liver problems. Tr. 48. Plaintiff testified that he had "a hard time being around people, a lot of people." Tr. 45.

The ALJ noted this testimony but discounted it because none of the treating physicians of record showed any prescription or other treatment for any mental disorder since the May 1, 2006 alleged onset date that was relevant to the application. Thus, the ALJ did not find a severe mental impairment at step two. Tr. 66-67. He did, however, include in the RFC mild limitations in socialization, activities of daily living and concentration, persistence, or pace. Tr. 68.

Dr. Dulle based his report on an examination in January 2009, which was several months after the ALJ's decision. The Commissioner argues that this makes the Dulle report outside the relevant time period, but the Appeals Council did not issue its decision until

February 2009, and it had the Dulle report before it.  Plaintiff had enough quarters of earnings to remain insured through September 2010.  Tr. 64.  Based on that insured status and Higginbotham, 405 F.3d 332, the report is relevant with respect to the claim for disability insurance benefits (which requires insured status) or supplemental security income.

Plaintiff told Dr. Dulle about his 2004 Brentwood hospitalization for depression and a suicide attempt.  Plaintiff said he was for a time taking medication for anxiety and was then taking an anti-depressant supplied by a local medical ministry.  Tr. 728.  Plaintiff's mood appeared anxious and depressed, and Dr. Dulle wrote that Plaintiff appeared authentic and in no way impressed as attempting to distort or exaggerate his symptoms.  Tr. 729.  Plaintiff said that he experienced paranoia, such as fears of a break-in, and he would not go outside if he saw people there.  Plaintiff said that he cries often and actually goes underneath his house rather than interact with people.  Tr. 730.  Dr. Dulle diagnosed major depressive disorder NOS; pain disorder associated with both psychological factors and a general medical condition; and personality disorder NOS with schizoid, avoidant, and dependent features. Tr. 732.  The signature page of Dr. Dulle's report is not included in the exhibit filed by Plaintiff's counsel, so it appears part of the report's summary and recommendation may have been omitted.

Counsel's brief to the Appeals Council attached a copy of the Dulle report and summarized its contents but did not ask for any specific relief based on it other than application of listing 12.05(C).  Tr. 692-96.  Plaintiff personally wrote two letters to the Appeals Council, in which he stated that he been prescribed Cymbalta, a depression

medication, but he could not afford it. Tr. 15-19. Plaintiff did not mention the pharmacist's advice to not take it because of his liver problems. The Appeals Council wrote that it considered the issues raised in all three letters but did not find a basis for changing the ALJ's decision.

Plaintiff's counsel now makes the different argument that Dr. Dulle's diagnosis of major depressive disorder NOS, pain disorder, and personality disorder NOS should have been included as severe impairments. An impairment "can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985).

The mental health problems described in Dr. Dulle's report appear to be of a level that would be expected to interfere to some degree with an individual's ability to work. For example, Plaintiff said he had climbed under his house because of a desire to avoid people. One might argue that the ALJ made up for the lack of including these matters at step two (even though the Dulle decision was not before him) when he included in the RFC mild limitations in socialization, concentration, persistence, or pace. However, the ALJ did not include those aspects of his written RFC finding in the hypothetical questions he posed to the VE, Tr. 27-31, and the parties have not pointed to any written questions to the VE that might have supplemented the evidence received at the hearing. Testimony from a VE may provide substantial evidence at step five, but the hypothetical question posed to the VE must incorporate reasonably all limitations recognized by the ALJ. Bolling v. Shalala, 36 F.3d

431, 436 (5th Cir. 1994).  See also Boyd v. Apfel, 239 F.3d 698, 707 (5th Cir. 2001). The questions posed to the VE at the hearing did not incorporate all limitations in the RFC, and the agency decision did not offer any explanation as to why it may not have been necessary.

The record contains a psychological report that suggests the reasonable possibility of mental limitations beyond those found by the ALJ. That evidence has not been specifically weighed or otherwise addressed by the Commissioner. The Commissioner is not required to discuss every piece of evidence, but he must discuss the uncontroverted evidence he chooses not to rely upon so that the court can perform its role of reviewing the Commissioner's final decision for support by substantial evidence. See Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996).  The court is unable to conduct a meaningful review where significant and probative evidence is rejected or overlooked without comment or explanation.  Rasball v. Barnhart, 2003 WL 22939244 (D. Kan. 2003).  See also Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir. 2005)("While a 'deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case,' inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand.")

The undersigned finds that the Commissioner's decision is not supported by substantial evidence because of this uncontested and unaddressed evidence that suggests a reasonable possibility of mental limitations beyond what the Commissioner found. This does not mean the court believes Plaintiff is disabled.  It merely means that the evidence of mental

limitations must, at a minimum, be specifically addressed in an agency decision and, perhaps, further explored through the gathering of other relevant evidence.

On remand, Plaintiff and the agency may further explore the issues addressed herein or any other relevant matters. See 20 C.F.R. § 404.983 (following a federal court remand, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case."). See also Social Security Law and Practice, § 55:74 (there is ordinarily "no limit on a claimant's supplementing the record on remand" after a sentence four or sentence six remand).

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be reversed and, pursuant to sentence four of 42 U.S.C. § 405(g), remanded to the Commissioner for further proceedings consistent with the court's decision.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 13th day of July, 2011.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE